

**SIGNED this 30th day of August, 2013.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | No. 13-10357-TMD |
| | § | |
| JERRY DON BRUNSON and | § | |
| TAMARA MUZNY BRUNSON, | § | |
| | § | Chapter 7 |
| Debtors. | § | |

**MEMORANDUM OPINION**

In this case, the Court must decide whether a debtor who holds a future fee simple interest in a house, and who currently lives in the house, but who has no present right to continue living in the house, may exempt her future interest in the house under Texas homestead law. As explained in this Memorandum Opinion, the Court determines that the debtor cannot exempt the future interest, which therefore remains property of the estate to be administered by the Chapter 7 Trustee.

Before the Court is the Objections [sic] to the Debtors' Schedule C Property Claimed as Exempt (the "Objection") [Dkt. No. 7] filed on March 29, 2013, by the Chapter 7 Trustee, John

1

Patrick Lowe (the "Trustee"), in the above-captioned case. The Court has considered the Debtors' Response to Trustee's Objections to the Debtors' Schedule C Property Claimed as Exempt (the "Response") [Dkt. No. 21], the Brief Supporting the Trustee's Objections to the Debtors' Schedule C Property Claimed as Exempt [Dkt. No. 30], the Supplement to the Brief Supporting the Trustee's Objections to the Debtors' Schedule C Property Claimed as Exempt [Dkt. No. 32], the presentations made at a hearing on this matter held on June 4, 2013 (the "Hearing"), all other evidence in the record, and the relevant case law. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

## I. FACTUAL BACKGROUND

The parties are not in dispute as to the relevant facts. Jerry Don Brunson and Tamara Muzny Brunson (the "Debtors"), who are married, filed a joint petition for relief (the "Petition") [Dkt. No. 1], under chapter 7 of title 11 of the United States Code (the "Code"), on February 28, 2013. On Schedule C attached to the Petition, the Debtors claimed a Texas homestead exemption on their current residence, which is at 6704 Kings Point West, Austin, Texas, 78723 (the "Kings Point Home"). Although they noted that their interest in the property is subject to the life estate of Ms. Brunson's father, Elton Johnny Muzny, the Debtors cited the Central Appraisal District valuation of the Kings Point Home at $158,570, and entered that full value as the "Value of Claimed Exemption." Schedule C.

Ms. Brunson received her interest in the Kings Point Home via a gift deed from Mr. Muzny dated April 1, 2009, which was recorded in Travis County, Texas, on November 25, 2009. *See* Objection at 1-2. In relevant part, the gift deed granted the Kings Point Home to Ms. Brunson but reserved "the full possession, benefit and use of" the home for Mr. Muzny "as a life

2

estate," "for the remainder" of his life. *See* Response ¶ 3.

The Debtors explain that Mr. Muzny is "in his 90's and in ill health," and that the Debtors have been permitted to co-habitate with Mr. Muzny in the Kings Point Home since the fall of 2009 pursuant to an "agreement," to the effect that Mr. Muzny "would convey the [Kings Point Home] to [Ms. Brunson] in exchange for caring for him until he passes away." Response ¶ 3. The agreement is "verbal only and not reduced to writing." *Id*. The Debtors do not pay rent. Response ¶¶ 6-7.

The Debtors have not presented evidence that Mr. Muzny is currently unable to live alone, nor given any other detail to the caretaking relationship. In her bankruptcy filings, Ms. Brunson represented that she "has access to her aged father's bank account because she pays his bills," but that is the only concrete indication of her involvement in his care. Schedule B. In addition, the Debtors have conceded that Mr. Muzny could, if he wished, expel them from the Kings Point Home at any time.

The Trustee objects to the exemption asserted by the Debtors in the Kings Point Home, arguing that Ms. Brunson's future interest in the Kings Point Home cannot be exempted and should remain property of the estate, subject to the administration of the Trustee for the benefit of the creditors of the estate.

The Debtors disagree. They claim that pursuant to their arrangement with Mr. Muzny, they have a present possessory interest in the property, and because that interest will be followed, upon Mr. Muzny's eventual passing, by their taking a fee simple interest in the Kings Point Home, their present and future interests merge for purposes of the homestead exemption.

Both in their briefs and at the hearing on this issue, the Debtors and Trustee have laid out their legal positions concerning this dispute. The matter is now ripe for decision.

3

## II. LEGAL ANALYSIS

The Debtors have opted to claim Texas state exemptions, as allowed by 11 U.S.C. § 522(b)(3). Texas law defines an urban homestead as "not more than 10 acres of land . . . together with any improvements thereon," provided that such land and improvements must be "used for the purpose of an urban home." TEX. PROP. CODE § 41.002(a). Subject to certain exceptions not applicable here, a homestead is "exempt from seizure for the claims of creditors." TEX. PROP. CODE § 41.001(a). "Homesteads are favorites of the law, and are liberally construed by Texas courts." *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 316 (5th Cir. 2003).

The issue is whether Texas homestead law permits the Debtors to exempt their future interest in the Kings Point Home.

### A. Texas Does Not Usually Exempt Future Interests

Ordinarily, future interests receive no protection under homestead law. "[H]omestead protection . . . can arise only in the person or family who has a present possessory interest in the subject property." *Laster v. First Huntsville Props.*, 826 S.W.2d 125, 130 (Tex. 1991). "[O]ne who holds only a future interest in property with no present right to possession is not entitled to homestead protection in that property." *Id*. "[I]n general, one cannot have a homestead interest in a reversionary interest because it is not a possessory interest." *In re Eskew*, 233 B.R. 708, 710 (Bankr. W.D. Tex. 1998).

### B. Present Possessory Interests—Even When Less Than Fee Simple—Are Exempt, To a Limited Degree

A present tenancy at will is sufficient to support a limited homestead claim under Texas law. "Under Texas law a homestead claimant need not hold the property in fee simple in order to invoke the exemption." *Resolution Trust Corp. v. Olivarez*, 29 F.3d 201, 205 (5th Cir. 1994). The law does not require a fee simple interest, nor even a written lease, only that a property be

4

"used for the purpose" of a home. *Perry*, 345 F.3d at 310 (quoting TEX. PROP. CODE § 41.002(b)).

But tenants can never exempt more than they have—"one's homestead right in property can never rise any higher than the right, title, or interest that he owns." *Resolution Trust*, 29 F.3d at 205 (quoting *Sayers v. Pyland*, 161 S.W.2d 769, 773 (Tex. 1942)). In practice, this means that the homestead interest of a tenant at will provides little protection. *Resolution Trust*, 29 F.3d at 205-07; *cf. Cleveland v. Milner*, 170 S.W. 2d 472, 475 (Tex. 1943) (suggesting that a tenant might have homestead rights to assert against his own creditors, but holding that his rights would not be effective against the owner of the property or the creditors of the owner).

In fact, as the Fifth Circuit noted in *Resolution Trust*, there are some Texas cases that conclude that without title, there is no homestead interest at all. 29 F.3d at 206 n. 6 (collecting cases). While the opinions in a number of the older Texas cases are rather terse, a review of the facts recited in those cases suggests that, instead of representing a real split of authority, the "if no title, then no homestead" strain of Texas case law can be read as reflecting the reality that the homestead exemption of a tenant at will is at best insubstantial. In each case, any homestead right that the tenants might have held was ineffective to provide the protection sought. *See Williams v. Corpus Christi Bank & Trust Co.*, 104 S.W.2d 56, 56-57 (Tex. Civ. App.—San Antonio 1937) (once husband and wife granted title of homestead land to others, despite the fact that they maintained their occupancy on the land "at the sufferance of the grantees," "it ceased to be their homestead," which meant husband could thereafter grant security interests in it without consent of wife); *infra*, Section II.D.

### C. Licensees, Unlike Tenants, Do Not Have a Homestead Interest

Texas law distinguishes between the rights of tenants and the rights of mere occupants or

licensees, such as hotel guests. "One in lawful possession of premises by permission of the owner or landlord and for no fixed term is a tenant at will." *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex. App.—El Paso 1994, writ denied).[1] Crucially, to be a tenant, one has to have exclusive right of possession in a property. "To create the relation[ship] of landlord and tenant, no particular words are necessary, but it is indispensable that it should appear to have been the intention of one party to *dispossess himself* of the premises and of the other [party] to occupy them." *B. & B. Vending Co. v. Ducharme*, 349 S.W.2d 630, 633 (Tex. Civ. App.—Dallas 1961, writ ref'd n.r.e.) (quoting *Brown v. Johnson*, 12 S.W.2d 543, 545 (Tex. 1929) (emphasis added)); *see also Tossow v. State*, No. 03-02-308, 2003 WL 738331, at *2 (Tex. Civ. App.—Austin March 6, 2003, no pet.) ("Tenancy implies a right of possession in the tenant exclusive even of the landlord. The *right of exclusive possession* is one of the *essential* elements of tenancy." (emphasis added) (internal citations omitted)); *Brooks v. Blue Ridge Ins. Co.*, 677 S.W.2d 646, 649, 652 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.) (describing "exclusive possession of the property" as "one of the constituting and essential elements of tenancy" (internal quotation and punctuation marks omitted)).

By contrast to tenants, licensees are entitled to few rights in a property, and the Court has not located any cases in which licensees have claimed a homestead exemption in the premises they are occupying. *See, e.g. Patel v. Northfield Ins. Co.*, 940 F. Supp. 995, 1002 (N.D. Tex. 1996) (internal citations omitted) (contrasting "mere licensees" such as "hotel guests" with "tenants"); *Mallam v. Trans-Texas Airways*, 227 S.W.2d 344, 346 (Tex. Civ. App.—El Paso

---

[1] Because they live with Mr. Muzny lawfully and by his consent, if the Brunsons are tenants, they are tenants at will, not tenants at sufferance. "A tenancy at sufferance is a lesser possessory estate. A tenant at sufferance is merely an occupant in naked possession of property. A tenant at sufferance is one who wrongfully continues in possession of property after his right to possession has ceased and does not assert a claim to superior title." *Id.* (internal citations omitted).

6

1949, no writ) (holding that a hotel guest has only "right of use" and no exclusive, possessory estate in the property, by contrast to a tenancy); *McBride v. Hosey*, 197 S.W.2d 372, 374-75 (Tex. Civ. App.—El Paso 1946, writ ref'd n.r.e.) (eviction is not required to eject hotel guest, merely "reasonable notice"). Tenants have an exclusive right of possession that gives them limited homestead rights; licensees and lodgers have no such exclusive right to possession and, correspondingly, no homestead rights.

### D. **Present Possessory Interests May Sometimes Protect Future Interests**

In many ways, the Brunsons' case turns on dicta of the Texas Supreme Court, conveyed in a footnote in the *Laster* case, to the effect that a present possessory interest might merge with a future interest to provide protection continuously back to the time of original occupancy: "[I]f a remainderman has a present right to possession in property sufficient to impress it with his homestead interest, and the property is not subject to the preexisting homestead interest of another, the property will be impressed with the homestead character when he receives it in fee simple, and its protection will date back to the time he began occupying it as his homestead." 826 S.W.2d at 130 n. 2. There are several important points to note about this dicta. First, the Laster court clearly states that any merger of present and future interests can only succeed if the alleged homestead "is not subject to the preexisting homestead interest another." *Id*. Second, the *Laster* court cites only one case in support of its dicta, *W.R. Thompson & Sons Lumber Co. v. Clifton*, in which a court held that when tenants in common hold undivided interests in a homestead and then partition it, retaining all the while its use as a homestead, they do not by the mere fact of partition sacrifice the homestead interests they held while it was undivided. 124 S.W. 2d 106, 107-08 (Tex. 1939). Because the homestead claimants actually *owned* an interest in the land both in the present (undivided) and future (after partition), *W.R. Thompson* is hardly a

7

radical declaration of the rights of future interest holders. The *Laster* dicta that relies on *W.R. Thompson* should be read with the facts of *W.R. Thompson* in mind.

In practice, the extension of a present right to protect a future one has rarely been approved. In a number of Texas cases, including several cited favorably in the text of the *Laster* opinion, a remainder-holding relative was *not* able to exempt the future interest as long as it remained a remainder interest, i.e., before the death of the life estate holder—even when the holder of the remainder interest dwelled on the property. Such was the case in *Hampton v. Gilliland*, in which a Texas court found that a son, who held a remainder interest, living at the family homestead with his mother, who had a life estate, would take no homestead interest himself in the homestead until his remainder interest became a present interest, which as it happens was after his death (in other words, he predeceased his mother, the holder of the life estate). 56 S.W. 572, 573-74 (Tex. Civ. App. 1900). The court placed weight on the fact that his mother, "by reason of her right as life tenant, could have ousted [him] at any time," because his occupancy was "dependent entirely on her consent." *Id*. at 573-74. The son was, in other words, merely a tenant whose "right of occupancy and possession did not accrue during his lifetime." *Id*. at 573. The court denied the homestead claim because "[t]he homestead right cannot be based on so precarious a tenure, and must await a right to which it can attach in some substantial and permanent way." *Id*. The mere fact that he had a remainder interest that would arise after the death of the holder of the life estate was of no moment, in light of the insubstantiality of the present estate by which he lived on the property through his lifetime. *Id*.

Obviously, *Hampton* is very instructive, and despite the fact that *Hampton* is 113 years

old, there appears to be no precedent contrary to it.[2] To the contrary, Texas courts have adhered to its holding. For instance, in *Rettig v. West End Realty Co.*, the court held that a son could convey away his interest in land that he lived upon with his father, upon which his father continuously lived (as his homestead) throughout his life. 241 S.W. 614 (Tex. Comm'n App. 1923, judgm't adopted). Despite the fact that the father allowed the son to build a separate house on the land, in which he and his wife lived, and despite the fact that the son actually *owned* an undivided interest in part of the land, because the father "during his lifetime never relinquished his use and control for his own homestead purposes of any specific or definite portion of his [land], but at all times retained and asserts such right to the whole of it, merely permitting his son . . . to live in a house he built thereon . . . [the son] never in fact acquired a homestead interest in the land while his father lived." *Id.* at 616. The same result was reached in *Turner v. Miller*, another case in which a holder of a remainder interest lived on the property with the holder of the life estate and sought protection of the remainder interest as a homestead. 255 S.W. 237 (Tex. Civ. App.—Amarillo 1923, no writ). The court refused to recognize the remainder holder's homestead interest in the remainder, observing: "The fact that the remainderman may be in possession, by virtue of some other right, with the owner of the life estate, does not strengthen his right to claim the remainder interest as exempt." 255 S.W. at 238; *see also Loessin v. Washington*, 57 S.W. 990, 991 (Tex. Civ. App. 1900, writ denied) ("[The life estate holder's] right . . . to [the homestead's] use, is exclusive and absolutely inconsistent with the homestead

---

[2] *Capitol Aggregates, Inc. v. Walker*, 448 S.W.2d 830, 835-36 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.), which dealt with whether mobile home owners can claim a homestead interest in their home despite the land underneath the home being subject to a month-to-month lease (and held they did have such an interest), arguably narrows the application of *Hampton* in some circumstances, but it does so on grounds not helpful to the Brunsons, namely that the *Walker* homestead claimants owned their living space, and the issue was only whether their homestead claim included in the ground beneath that home.

9

use by another. To uphold the contention of appellees would be to permit a homestead to be piled upon a homestead on the same land, a contention which seems to us manifestly untenable."). In *Massillon Engine & Thresher Co. v. Barrow*, a son who lived in his widowed mother's home with her, working for her and not paying rent, could not claim a homestead interest in that home. 231 S.W. 368, 369 (Tex. Comm'n App. 1921, judgm't adopted). This was despite the fact that the son and his two siblings owned an undivided interest in the land, which was exercised after the mother's death. *Id*. at 368-69. The *Massillon* court noted: "No contention is made that [the mother] abandoned her homestead, or waived her right thereto; but, on the other hand, it is admitted that she continued to exercise the right of homestead possessions given her under the Constitution until her death. This right was, we think, exclusive, and preluded [the son] and the other heirs absolutely from asserting a homestead interest in the same land which she claimed as a homestead, while her right of possession continued and was exercised." *Id*. at 369. The holdings in *Massillon* and in *Rettig* were relied upon, and cited as "settled law," in another, similar case, *Greenawalt v. Cunningham*, 107 S.W.2d 1099, 1100 (Tex. Civ. App.—Dallas 1937, no writ).

The consistent rationale of these cases is that a tenant's homestead exemption "will depend upon the will and whim" of the current owner, it is no protection against alienation of a remainder interest the tenant may hold. *Perry*, 345 F.3d at 315. These cases also reinforce the statement in *Laster* that a future interest holder with a present possessory interest can only claim a present homestead if that claimed homestead "is not subject to the preexisting homestead interest another." 826 S.W.2d at 130 n. 2.

In sum, it is settled law in Texas that children who have future interests in a family homestead and co-habitate with a parent who holds a life estate in that homestead cannot exempt

10

their future interests by virtue of their limited present interests as tenants on the land.

### E. Cases From This District

The principles outlined above have been applied in two cases from this district. In one case, *In re Eskew*, a bankruptcy court in this district allowed a debtor to exempt his future interest in a homestead. 233 B.R. 708 (Bankr. W.D. Tex. 1998). In *Eskew*, the tenant had a current—albeit unwritten and rent-free—lease, obtained from the life tenant, in addition to a future fee simple interest that was going to succeed upon the life estate. *Eskew*, 233 B.R. at 710. In *Eskew*, the life tenant did not claim the property as her homestead, nor did she live on the premises. *Id*. The bankruptcy court held that despite the holder of the life estate still being alive—and being able in theory to displace the tenant—the tenant's actual, present possession merged with his future interest. *Id*. at 711-12. Thus, the *Eskew* bankruptcy court followed the Texas Supreme Court in holding that there is a possibility of a future interest being protected by a present estate, "[i]f a remainderman has a present right to possession in property sufficient to impress it with his homestead interest." *Laster*, 826 S.W.2d at 130 n. 2. It is significant that in *Eskew*, the life tenant had never claimed a homestead in the property, and the son had held the land as homestead since before he deeded the life estate to the mother. *Eskew*, 233 B.R. at 710. The *Eskew* court placed very heavy reliance on the fact that the debtor was "in complete and sole possession of the property," a factor that allowed the court to rely on a different line of cases. 233 B.R. at 710 (citing *Evans v. Mills*, 67 F.2d 840 (5th Cir. 1933) and *Smith v. Moody (In re Moody)*, 862 F.2d 1194 (5th Cir. 1989)).

The Trustee points to another case from a bankruptcy court in this district, decided last year. *In re Aguirre*, No. 12-51304 (Bankr. W.D. Tex. 2012) (King, C.J.). In *Aguirre*, Chief Judge King allowed the debtor to exempt her oral leasehold interest in a property, but he denied

11

her attempt to exempt her remainder interest, which was subject to her mother's life estate. The *Aguirre* debtor, who held the remainder interest in the house, paid rent to her mother, who held a life estate in the house but did not live there. At a hearing on July 17, 2012, the debtor in *Aguirre* capably advanced arguments similar to those the Brunsons have urged here. Chief Judge King explained his ruling on the record. He denied the exemption of the remainder interest, and explicitly declined to follow *Eskew*. He held that because the life estate holder (the mother) could exclude the future interest holder (the debtor) if she so desired in the future, looking prospectively at the debtor's interests there is a "gap" between the present possessory right and the future remainder interest. He held that notwithstanding whatever their intentions were in so conveying the property, the life estate holder and the debtor would be bound by the legal documents pursuant to which the life estate was reserved and the remainder conveyed.

F. **Analysis of the Brunson's Interests**

   1. <u>The Brunsons Might Be Mere Licensees With No Possessory Interest</u>

Having surveyed the relevant cases, the Court turns to the facts of the Brunsons' case. The Brunsons can be characterized as either tenants at will or mere licensees of Mr. Muzny. Tenancy at will is the more robust status. However, as noted above, Texas law states that to be a tenant, one must have the right to *exclusive* possession of the property (which the Brunsons apparently do not). *Brooks*, 677 S.W.2d at 649, 652; *Tossow*, 2003 WL 738331, at *2.

Because the Brunsons lack the right to exclude Mr. Muzny, probably they are not tenants, and would be considered under Texas law to be mere licensees, analogous to hotel guests or other lodgers (or even, as the Trustee suggested at the Hearing, to a "postman"). If they are characterized as mere licensees, they have few if any rights in the Kings Point Home and hold no "estate" in the property sufficient to uphold a homestead claim. This would then be an easy case,

12

because their present right would not rise to the level of what can support *any* homestead claim, much less the "present-plus-future" type of claim that they are seeking.

However, the Court has not located Texas cases that explicitly characterize close family members consensually cohabitating with a current estate holder as mere licensees, and some cases seem to describe such family members as "tenants" (perhaps merely due to imprecision or what is a now outdated usage of that term). *See, e.g.*, *Hampton*, 56 S.W. at 573. Moreover, the rudimentary evidentiary record before the Court does not allow for particularly fine-grained analysis of the living situation of the Brunsons and Mr. Muzny. Accordingly, despite the significant possibility that Texas law might permit the analysis to stop here, the Court proceeds with the following analysis as if the Brunsons are tenants at will.

2. Assuming the Brunsons Have a Tenancy, Their Present Interest Is Very Limited

As both sides agree, the Debtors have a present right of occupancy in the Kings Point Home, but that interest could be terminated by Mr. Muzny at his discretion. The parties differ in their view of what relationship the present interest bears to their future right to hold the home in fee simple upon Mr. Muzny's passing. The Trustee emphasizes the possibility that there will be a "gap" between the two interests, for instance if they become estranged from Mr. Muzny. The Debtors emphasize both their and Mr. Muzny's intention to continue the arrangements that have been in place for the last four years, so that they may care for Mr. Muzny in his old age. They point to the high likelihood that their present estate will continue until Mr. Muzny's passing, and at that time will merge with their future interest.

Unlike *Aguirre*, the holder of the life estate in the Kings Point Home co-habitates with the Brunsons, and does not charge them rent, nor do they live there by any formal arrangement such as a lease. And Mr. Muzny has a current, continuing homestead claim in the Kings Point

13

Home. The Brunsons have a steeper uphill battle than the debtor in *Aguirre* due to the "overlapping" of Mr. Muzny's claim with their claim, and due to their lack of exclusive occupancy.

Thus under *Aguirre*, the Brunsons lose. But even under *Eskew*, the Brunsons likely lose. The *Eskew* case placed significant emphasis on the fact that in that case, unlike other cases, the holder of the life estate did not claim the property as a present homestead. *Eskew*, 233 B.R. at 710-11. Here, Mr. Muzny "never gave up his . . . exclusive right to possession under a life estate." *Id*. at 711. While he allows the Brunsons to occupy the land, he retains the unfettered right to exclude them from it at will. This can be distinguished starkly from the factual situation of the debtors in *Eskew*.

In sum, not one of the cases cited above provides much if any support for the Brunsons. Even assuming the Brunsons currently are tenants who have some present estate under state law, rather than being mere licensees with no estate in Mr. Muzny's homestead, their continued use of the Kings Point Home as their homestead is dependent upon Mr. Muzny's "whim." *Perry*, 345 F.3d at 315. In addition, Mr. Muzny continues to live in the home himself and to claim it as a homestead, which under Texas law eliminates (or at the very least greatly weakens) their claim to a homestead in the same house. While the Brunsons' remainder interest may possibly or likely succeed directly upon their current interest, their current interest is not enough to protect their future interest from their creditors.

### G. "Family" Homestead Cases Cannot Support the Brunsons

Although it was not argued by the Brunsons, there is one strand of Texas case law that bears mentioning. Individuals who have assumed responsibility for the care of dependents (including children or elderly dependents) have been held to constitute a "family" under Texas

14

homestead law. *See, e.g.*, *Garrard v. Henderson*, 209 S.W.2d 225 (Tex. Civ. App.—Dallas 1948, no writ); *Hutchenrider v. Smith*, 242 S.W. 204 (Tex. Comm. App.—Section B 1922, no writ); *Birdwell v. Burleson*, 72 S.W. 446 (Tex. Civ. App. 1902, writ ref'd); *United Fid. Life Ins. Co. v. Plainview Bldg. & Loan Ass'n*, 81 S.W.2d 1092 (Tex. Civ. App.—Amarillo 1935, no writ). The issue has arisen in the context of Texas law's rural homestead exemption, which allows 200 acres to be claimed by families, but only 100 acres to be claimed by single people. *See* TEX. PROP. CODE 41.002(b). The cases do not address the question presented here. All they suggest is that under some circumstances, Texas law views individuals who are bound by "moral obligation" to one another to constitute families for purposes of the homestead statute. *Zielinski v. Hill (In re Hill)*, 972 F.2d 116, 122 (5th Cir. 1992); *see also Garrard*, 209 S.W.2d at 229 (noting that this the principle applies where there is a "moral or legal obligation on the part of one to support and care for the other, and where the necessity for such care and support exists"). "Although Texas cases focusing on the homestead are not consistent, those dealing generally with homestead rights among close family members support the proposition that homestead rights may exist in the absence of legal title to land." *In re Moody*, 77 B.R. 580, 596 (S.D. Tex. 1987), *aff'd*, 862 F.2d 1194 (5th Cir. 1989).

This case law potentially could be extended to support an exception to the usual rules discussed above. In other words, it is possible that the Texas rules against the exemption of future interests might not apply where the present and future interest holders in essence form one unified family unit, and where, for this reason, denying their ability to "merge" these interests would be unwarranted. The argument would be that when the holder of a future estate lives with the holder of the life estate, and one is bound to the other by a "moral obligation" to offer necessary "care and support," their interests cannot and should not be treated as separate or

15

separable. In other words, the moral ties that bind would bridge the "gap" between the present and future interest because the possibility of the parent evicting the child is too remote to recognize. The Court has found no cases so holding (or refusing to so hold), but it seems possible that factual circumstances could arise in which this argument would have force.

That said, those circumstances are not present here. While representations have been made that Mr. Muzny is elderly (in his 90s) and "in ill health," Response ¶ 4, and that the Brunsons help care for him, the record contains no indication that he is dependent upon the Brunsons or that the three individuals' affairs are intertwined or that there is a relationship of dependency or necessary care and support. The only concrete indication of the help given to Mr. Muzny is the Debtors' note in their Schedule B that Ms. Brunson has access to Mr. Muzny's bank account to help him pay his bills but that she has "no equitable interest in the funds" contained therein. The deed by which the future estate was conveyed to Ms. Brunson in 2009 makes clear that Mr. Muzny intended to reserve for himself, for the duration of his life, "the full possession, benefit and use" of the Kings Point Home.

The Brunsons are well represented by able counsel, who has had ample opportunity to present relevant evidence and arguments. The record simply does not support granting them relief under this novel theory. The Court is mindful that the law should be liberally construed in favor of finding a homestead, but that is not the same as engaging in speculation in order to reach a putatively desired result. The long line of Texas cases holding that remainder-holding children have no homestead rights in land occupied by life-estate-holding parents must govern.

## III. CONCLUSION

While the Brunsons may be able to claim a valid, current homestead interest in the Kings Point Home, their homestead interest stretches only the extent of their present interest, and does not include (or merge with) Ms. Brunson's future interest. Thus the Brunsons' homestead interest neither prevents a sale of the current life estate by the life estate holder, nor a sale by the Trustee of the remainder interest that will succeed upon that life estate. The Court will GRANT the Trustee's Objection.